UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE RICHARDSON,

    Plaintiff,

v.

WAL-MART STORES, INC.,

    Defendant.
    _____/

Case No. 04-00734

Honorable Nancy G. Edmunds

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [23]**

Plaintiff's complaint alleges that Defendant violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 260l, *et seq.*, when it terminated her employment on May 29, 2004. This matter comes before the Court on Plaintiff's motion for summary judgment. Because genuine issues of material fact exist for trial on Plaintiff's FMLA claim, her motion for summary judgment is DENIED.

**I.   Facts**

Plaintiff worked at Defendant Wal-Mart as a cashier and sales associate from July 2002 to May 29, 2004. Wal-Mart's disciplinary policy for attendance and punctuality violations is progressive. An employee is given a verbal coaching first, a written coaching second, and a decision-making day coaching third. If the employee is violation-free for one year, then his or her record is cleared. After the decision-day coaching, if a violation is committed within that one-year period, the employee is terminated. (Heshelman Dep. at 21-22, 61-62, 66-67.)

On December 10, 2003, Plaintiff received a verbal coaching for accruing overtime without prior approval. (Heshelman Dep. at 33-34; Ex. 4, 12/10/03 Verbal Coaching Record; Ex. 9, 6/14/04 Heshelman notes.)

On April 7, 2004, Plaintiff received a written coaching for poor job performance. (Heshelman Dep. at 34-35, Ex. 5, 4/7/04 Written Coaching Record; Ex. 9, 6/14/04 Heshelman notes.)

On May 17, 2004, Plaintiff received a decision-day coaching for excessive absenteeism and tardiness (2 unapproved tardies, 3 approved tardies, 8 approved absences, and 8 unapproved absences since the first of the year). (Heshelman Dep. at 35-37; Ex. 8, 5/17/04 Decision Day Record; Ex. 9, 6/14/04 Heshelman notes.) On May 18, 2004, Plaintiff had a paid day off. She returned to work on May 19, 2004. (Heshelman Dep. at 37; Ex. 9, 6/14/04 Heshelman notes.)

On May 25, 2004, Plaintiff left work early. Before she left, she testifies that she told a fellow employee that "she was flowing too hard" and asked her assistant manager David Green if she could go home because she was in a lot of pain and felt nauseous. The assistant manager told her to just make sure to bring in a doctor's slip. (Plf.'s Dep. at 27-28; Heshelman Dep. at 23-24, 38; Ex. 9, 6/14/04 Heshelman notes.) Plaintiff testifies that, approximately a week before May 25, 2004, she asked her store manager, Jeff Adams, for an unpaid medical leave because she was have severe menstrual pains and female problems, and he told her that he would discuss it with Plaintiff later. (Plf.'s Dep. at 21-22.)

On May 26, 2004, Plaintiff called in sick before her shift. Later that day, Plaintiff went to the Intercare Community Health Network of the Pullman Health Center in Pullman, Michigan. She was treated by Renee Hibma, a Family Nurse Practitioner, for problems

with her menstrual period. Plaintiff complained of "bad cramping, increased clotting, and a heavy blood flow during her then current period . . . [and] bad pain for 5 days." (Hibma Aff. ¶ 2.) After examining Plaintiff, Ms. Hibma completed a "Certificate for Return to School Work" form, stating that Plaintiff was under her care from May 26, 2004, that she should be off work from May 25 through May 28, 2004, and may return to work on May 29, 2004. (Plf.'s Ex. 10.) The note did not provide a diagnosis or reason for Plaintiff's absence from work or a description of Plaintiff's treatment. (*Id.*)

On May 26, 2004, Plaintiff delivered the medical note to Pam Foster, the Personnel Manager at the South Haven Wal-Mart Store. (Plf.'s Dep. at 45-46, 51.) On May 27, 2004, Plaintiff did not call in to Wal-Mart because she was not scheduled to work. (Plf.'s Br. at 3.) On May 28, 2004, Plaintiff called in to report her absence. (Plf.'s Dep. at 51-52; Heshelman Dep. at 27, 38-40; Ex. 9, 6/14/04 Heshelman Notes.)

On May 29, 2004, Plaintiff reported to work. Ms. Heshelman, her direct supervisor, recommended to the store manager, Mr. Adams, that Plaintiff be terminated for excessive absenteeism because she missed two and one-half days of work one week after having been given a decision-day for exactly the same reason. (Ex. 9, 6/14/04 Heshelman Notes; Heshelman Dep. at 27-29, 40-42.) Plaintiff's direct supervisor, Jeanne Heshelman, testified that she had no knowledge that Plaintiff wanted a medical leave: "Michelle had not asked for leave. . . . It was not brought up. She didn't indicate that the medical condition was anything that would require a leave." "She didn't indicate that this was a serious problem or an ongoing problem at that time." (Heshelman Dep. at 28-29, 52.) Ms. Heshelman further testified that she did not attempt to talk to Plaintiff's medical care provider about

Plaintiff's absences because she "felt it would be a breach of her privacy." (Heshelman Dep. at 53.)

Later on May 29, 2004, Plaintiff was terminated by store manager Adams. (Heshelman Dep. at 41-42.)

On June 9, 2004, Plaintiff was treated again by Family Nurse Practitioner Renee Hibma for "the same general problems as she was having on May 26, 2004" and was referred to Dr. John Young for further treatment. (Hibma Aff. ¶ 6.)

On June 25, 2004, Dr. Young saw Plaintiff for the first time. At first, Dr. Young believed Plaintiff may have a pelvic infection and prescribed antibiotics and birth control pills in the hope that her symptoms would disappear. (Young Aff. ¶¶ 2-3.)

On August 20, 2004, Dr. Young saw Plaintiff again. Her symptoms had not been relieved by the prescribed medical treatment. Dr. Young determined that, with her consent, he would perform surgery. If he found endometriosis, he would remove her uterus, ovaries and fallopian tubes. If he did not find endometriosis, he would remove just her uterus. (Young Aff. ¶ 4.)

On September 23, 2004, surgery was performed. Dr. Young did not find endometriosis and just removed Plaintiff's uterus. (Young Aff. ¶ 5.) When Dr. Young saw Plaintiff on October 8, 2004, she told him she was pain free. (Young Aff. ¶ 6.)

Plaintiff testified at her deposition that she was unable to work from May of 2004 through December 1, 2004 because she "went through major surgery." (Plf. Dep. at 35-36.) In response to Defendant Wal-Mart's argument that it could not have violated the FMLA because Plaintiff would have been unable to return to work at the expiration of a 12-week FMLA leave, Plaintiff now contradicts this testimony with an Affidavit filed with her

Reply.  Plaintiff now attests that she "had intended to continue working at Wal-Mart.  I could have continued working at Wal-Mart, except for days during my menstrual flows in which I had severe disabling pain.  I elected to have surgery late September 2004 because I did not have a job anyway and I wanted to eliminate the severe disabling pain I was having during my menstrual cycle that was negatively affecting the quality of my life."  (Plf.'s 12/16/05 Aff. ¶ 4.)

## II.   Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

5

The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### III. Analysis

"The FMLA entitles qualifying employees to twelve weeks of unpaid leave each year if, among other things, an employee has 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003) (quoting 29 U.S.C. § 2612(a)(1)(D)). To establish a *prima facie* case for her FMLA claim, Plaintiff must prove that: (1) she is an eligible employee; (2) Defendant Wal-Mart is an employer covered under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave Wal-Mart notice of her intent to take FMLA leave, and (5) Wal-Mart denied her FMLA benefits to which she was entitled. *See id.*

Plaintiff's motion argues that she is entitled to summary judgment, as a matter of law, on her FMLA claim and that she is entitled to liquidated damages under the FMLA. Plaintiff's motion is DENIED. There are genuine issues of material fact that preclude summary judgment for Plaintiff; e.g., whether Plaintiff adequately notified Defendant of her intent to take FMLA-qualifying leave for a serious medical condition. Ms. Heshelman, Plaintiff's direct supervisor, has testified that she had no knowledge that Plaintiff wanted a medical leave, that Plaintiff "had not asked for leave"; did not "indicate that the medical condition was anything that would require a leave"; and did not "indicate that this was a serious problem or an ongoing problem at that time." (Heshelman Dep. at 28-29, 52.) Moreover, the note from Family Nurse Practitioner Renee Hibma did not indicate that

Plaintiff was suffering from a serious medical condition that would require FMLA leave. (Plf.'s Ex. 10.)

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED.

       s/Nancy G. Edmunds
       Nancy G. Edmunds
       United States District Judge

Dated:  January 11, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 11, 2006, by electronic and/or ordinary mail.

       s/Carol A. Hemeyer
       Case Manager